IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

TRACY OWEN MILES,  )
    )
    **Plaintiff,**  )
    )
v.  )    Civil Action No. 7:15-cv-550
    )
CAROLYN W. COLVIN,  )
**Acting Commissioner of Social Security,**  )
    )
    **Defendant.**  )

## MEMORANDUM OPINION

Plaintiff Tracy Owen Miles ("Miles") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Miles alleges that the Administrative Law Judge ("ALJ") erred by (1) finding that his spine disorder did not meet a Listing; (2) failing to give adequate weight to the opinion of Chris Lentz, PA-C; and (3) improperly evaluating his pain and credibility. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **DENY** Miles's Motion for Summary Judgment (Dkt. No. 14) and **GRANT** the Commissioner's Motion for Summary Judgment. (Dkt. No. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Miles failed to demonstrate that he was disabled

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Miles filed for SSI and DIB on August 29, 2011, claiming that his disability began on October 7, 2010, due to stiff back and neck, extreme pain, numb hands and fingers, arthritis, tinnitus, migraines, short term memory loss, difficulty swallowing, and left knee weakness. R. 252, 254, 272. Miles's date last insured was December 31, 2015.[2] Thus, he must show that his disability began on or before December 31, 2015 and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Miles's applications at the initial and reconsideration levels of administrative review. R. 81–92, 93–104, 107–119, 121–133. On January 13, 2014, ALJ Joseph T. Scruton held a hearing to consider Miles's claims for DIB and SSI. R. 40–80. Miles

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Miles was born on April 2, 1969, and was 44 years old on the date of the hearing before the ALJ, making him a "younger person" under the Social Security Act. R. 81, 252.

2

had non-attorney representatives at the hearing, which included testimony from vocational expert Asheley Wells.[3]

On March 7, 2014, the ALJ entered his decision analyzing Miles's claims under the familiar five-step process[4] and denying his claim for benefits. R. 27–38. The ALJ found that Miles was insured at the time of the alleged disability onset and that he suffered from the severe impairments of lumber and cervical spine degenerative disc disease, history of inguinal hernia, situational anxiety/depression, and possible carpal tunnel syndrome. R. 29. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 30. The ALJ concluded that Miles retained the residual functional capacity ("RFC") to perform a limited range of light work.[5] R. 31. Specifically, the ALJ found that Miles can occasionally climb ramps and stairs, balance, kneel, crawl, stoop, and crouch, can never climb ladders or scaffolds, must avoid unprotected heights and workplace hazards, and cannot engage in repetitive foot controls. Id. Further, Miles can occasionally reach overhead and frequently reach in other directions and handle and finger. Id. Miles is limited to short, simple, non-detailed instructions throughout an eight-hour day, and is able to interact appropriately with supervisors and others and respond to routine work changes. Id.

---

[3] Miles is now represented by counsel, who filed a brief for summary judgment on his behalf.

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] The ALJ found that Miles can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours in an eight-hour day, and sit up to six hours in an eight-hour day. R. 31.

The ALJ determined that Miles was not capable of performing his past relevant work as an electrician. R. 35. However, the ALJ found that Miles could perform jobs that exist in significant numbers in the national economy, such as cashier, cafeteria attendant, and assembler. R. 37. Thus, the ALJ concluded that Miles was not disabled. R. 37. Miles appealed the ALJ's decision and the Appeals Council denied his request for review on August 18, 2015. R. 1–4.

## ANALYSIS

Miles alleges that the ALJ erred by: (1) failing to find that his spine disorder met or equaled Listing 1.02 and 1.04; (2) failing to give adequate weight to the opinion of PA Lentz; and (3) improperly evaluating his pain and credibility.

### A. Medical History

As noted by the ALJ, Miles has received treatment for back and neck pain since his alleged onset date in October 2010, including trigger point injections, acupuncture, and prescription pain medication. R. 33. An MRI of his cervical spine in December 2013 showed spondylosis and disc disease, most pronounced at C5/C6 level, with some interval disc ossification. R. 502. An MRI of his lumbar spine on the same date showed mild spondylosis with disc bulges on T12/L1 and L4/L5 with mild to moderate biforaminal narrowing, as well as slight progression of the anterior listhesis at L4/L5. R. 505.

Miles's primary care provider, PA Lentz, of the Department of Veterans Affairs Medical Center, provided a letter dated August 17, 2011 ("August 2011 Letter"). R. 296. The letter stated that Miles suffered increased back and neck pain following a motor vehicle collision in July 2004 and that he provides Miles with monthly trigger point injections. It further stated that "Mr. Miles has tried to maintain jobs but has not been able to due to his chronic pain. In my opinion he can no longer maintain gainful employment, and is totally/permanently disabled." Id. PA

4

Lentz also completed a Physical Limitations Assessment on January 25, 2012, indicating that Miles could perform light work, but that his medical condition caused significant pain resulting in interruption of activities and concentration, would require unpredictable and/or lengthy periods of rest during the day, and he would miss more than two days of work a month.[6] R. 403.

State agency physician William Humphries, M.D. performed a consultative examination on December 23, 2011. R. 396–400. On examination, Dr. Humphries found Miles's range of motion in his neck and back mildly reduced and his joint range of motion in his upper and lower extremities generally within normal limits.[7] R. 398. Dr. Humphries diagnosed him with posttraumatic strain of the cervical, thoracic and lumbar spine with possible degenerative joint disease, recurrent headaches, mild degenerative joint disease of the left knee, and hypertension. R. 399. In his functional assessment, Dr. Humphries indicated that Miles was limited to sitting and standing/walking for six hours in an eight-hour workday, lifting 25 pounds occasionally and 10 pounds frequently, unlimited stooping and crouching, but only occasional climbing, no kneeling or crawling, and no repetitive left foot controls. R. 399.

State agency physicians Joseph Duckwall, M.D., and Shirish Shahane, M.D., following a records review in January and May, 2012, also both indicated that Miles could perform a range of light work. R. 88–90, 100–02, 115–16, 129–30.

**B. Listing 1.04 and 1.02**

---

[6] As noted by the ALJ, the record contains a nursing note indicating that, on July 16, 2013, Miles presented to the clinic as a 'walk in," complaining about how his disability paperwork had been completed and asserting that he "wants to tell provider how he wants it filled out." R. 34, 566.

[7] Dr. Humphries found mild synovial thickening and slightly diminished motion in some of the interphalangeal joints in Miles's upper extremities. R. 398.

Miles argues that the ALJ should have found that he met the requirements of Listing 1.02 and 1.04.[8] R. 30. The Commissioner argues that the medical evidence fails to show that Miles meets or medically equals either Listing.

In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if his or her impairment meets or is medically equivalent to the criteria of an impairment set forth in the Listings. See 20 C.F.R. § 416.925. Under Listing 1.02, a social security claimant is disabled if she has "[m]ajor dysfunction of a joint" due to any cause.[9] 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02. In addition, the "major dysfunction of a joint" also requires the involvement of one major weight-bearing joint (i.e. hip, knee, or ankle) resulting in an inability to ambulate effectively, or one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively. Id.

Listing 1.04 covers disorders of the spine. A claimant is entitled to a conclusive presumption that he is disabled if he can show that his disorder results in compromise of a nerve root or the spinal cord, with either evidence of nerve root compression (1.04A), spinal arachnoiditis (1.04B), or lumbar spinal stenosis resulting in pseudoclaudication and the inability to ambulate effectively (1.04C).[10] 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04.

---

[8] As noted by the ALJ, Miles did not argue at the hearing that he met a Listing.

[9] "Major dysfunction of a joint" is defined as "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)," and "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." Listing of Impairments § 1.02.

[10] Miles fails to specify whether his limitations meet the requirements of Listing 1.04A, B, and/or C.

In this case, the ALJ specifically considered Listings 1.02 and 1.04 and concluded that the evidence "fails to establish an impairment . . . accompanied by signs [] reflective of listing-level severity." R. 30. He wrote:

> [Miles] does not meet sections 1.02 or 1.04 because he does not have a documented inability to ambulate or a disorder that results in a compromise of a nerve root or the spinal cord as required in those listings.

Id. The ALJ further emphasized that none of Miles's physicians of record has reported the required clinical, laboratory or radiographic findings, and the State Disability Determination Service physicians concluded that Miles did not meet a Listing. Elsewhere in the opinion, the ALJ noted that the claimant testified at the hearing that he did not use any ambulatory aids. R. 33, 72.

Miles argues that his December 2013 MRI shows that he meets Listing 1.02. Pl.'s Br. at 8, Dkt. No. 15. However, Miles fails to explain how the MRI shows that he meets a Listing, or how the ALJ's Listing analysis was flawed. Miles certainly fails to meet his burden to show that each of the required symptoms of a Listing were present. See Sullivan, 493 U.S. at 530 ("For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Miles also points to no treatment provider that found he met a Listing; instead, he relies on PA Lentz's August 2011 letter indicating that Miles "can no longer maintain gainful employment, and is totally/permanently disabled." Pl.'s Br. at 9, 11, Dkt. No. 15; R. 296. However, the ultimate decision on whether Miles meets the statutory definition for disability is an administrative decision that is always reserved to the Commissioner. See Morgan v. Barnhart, 142 F. App'x 716, 721–722 (4th Cir. 2005) (finding legal conclusions such as

7

"statements[s] by a medical source that [the claimant is] 'disabled' or 'unable to work" are opinions on issues reserved to the ALJ).

This is not a case where the ALJ failed to consider a Listing, but rather the ALJ considered the evidence in the record, including the MRI relied on by Miles, and determined that although Miles's lumbar and cervical spine degenerative disc disease was a severe impairment, his impairments individually or combined did not meet Listing 1.02, 1.04, or any other listing. R. 30. It is the job of the ALJ to weigh evidence and resolve any evidentiary conflicts. To the extent Miles asserts that medical evidence is present that strongly supports Listing 1.02 or 1.04, the ALJ concluded otherwise, considering all evidence in the record, and his decision is supported by such evidence. Therefore, the ALJ did not err in determining Miles's condition did not meet the requirements of the Listing and remand is not warranted on this ground.

### C. PA Lentz

Miles argues that the ALJ erred by rejecting the opinion of PA Lentz that he could not perform gainful employment and was totally/permanently disabled. Miles writes, "Certainly the MRI and the injections and medication and the letter by Chris Lentz, of the Veterans Affairs, stating his patient was disabled, should be sufficient." Pl.'s Br. at 10, Dkt. No. 15. The record contains opinions from PA Lentz, who completed the August 2011 letter and a Physical Limitations Assessment, as well as two state agency physicians, Drs. Duckwall and Shahane, who completed a records review, and state agency physician Dr. Humphries, who completed a consultative examination. As noted by the ALJ, Drs. Duckwall, Shahane, Humphries and PA Lentz all found that Miles could perform a range of light work. R. 35. Regarding PA Lentz, the ALJ wrote:

> In August 2011, [PA Lentz] opined [Miles] could no longer maintain gainful employment and was totally/permanently disabled. In January 2012, Mr. Lentz opined . . . [Miles]

8

would be limited to light work lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing 10 pounds. Mr. Lentz further opined [Miles had] a medical condition that would require unpredictable and/or lengthy periods of rest during the day and on average, he would be expected to miss work more than 2 days a month.

R. 34. The ALJ gave PA Lentz's opinion "great weight to the extent [Miles] is limited to light exertional work and [Miles] has the ability to frequently reach, handle, and finger." R. 35. However, as previously explained, the ultimate decision on whether Miles meets the statutory definition for disability is always reserved to the Commissioner, and thus PA Lentz's letter containing his opinion on Miles's disability was entitled to no special weight. See Barnhart, 142 F. App'x at 721–722. Further, as a physician's assistant, Lentz is not an acceptable medical source as defined by the Act.[11] 20 C.F.R. §§ 404.1513, 416.913 (indicating "[w]e need evidence from acceptable medical sources to establish whether you have a medically determinable impairment" and defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and—for limited purposes—licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). The opinions of non-acceptable medical sources are not entitled to any particular weight, and the ALJ is not required to explain the weight given to such opinions unless it might affect the case's outcome. See Adkins v. Colvin, No. 4:13-CV-00024, 2014 WL 3734331, at *3 (W.D. Va. July 28, 2014); see also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (finding no error in ALJ's failure to expressly weigh the opinion of claimant's physical therapist).

Nevertheless, the ALJ has a duty to consider all of the evidence available in a claimant's case record, including evidence provided from medical sources who are not "acceptable medical sources" such as a physician's assistant. See Ingle v. Astrue, 1:10CV141, 2011 WL 5328036, at

---

[11] I note that Miles incorrectly refers to PA Lentz as Dr. Lentz on multiple occasions in his brief. Pl.'s Br. at 4, 11, Dkt. No. 15. This error, while I am sure is inadvertent, is not trivial because under the Regulations there is a distinction between the opinion of a doctor and other treatment providers, such as a physician's assistant.

9

*3 (W.D.N.C. Nov. 7, 2011) (citing Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939 (SSA)(Aug. 9, 2006); 20 CFR §§ 404.1513(d), 416.913(d)). While evidence from these non-acceptable medical sources cannot be used to establish the existence of a medically determinable impairment; "such sources may provide evidence, including opinion testimony, regarding the severity of the claimant's impairments and [how] such impairment[s] affect the individual's ability to function." Id. (citing SSR 06–03p; 20 CFR §§ 404.1513(d), 416.913(d)); see also Ledbetter v. Astrue, 8:10–CV–00195–JDA, 2011 WL 1335840, at *10 (D.S.C. April 7, 2011) ("[O]pinions from medical sources, even when not 'acceptable medical sources,' are important and should be evaluated on key issues such as impairment severity and functional effects." (citing SSR 06–03p)).

To determine the weight given to the opinion of a source who is not an "acceptable medical source" as defined by the Act, the ALJ should consider: (1) the length of time the source has known the claimant and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides supportive evidence; (4) how well the source explains his or her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the opinion. Beck v. Astrue, 3:11–CV–00711, 2012 WL 3926018, at *12 (S.D.W. Va. Sept. 7, 2012) (citing SSR 06–03p).

Here, the ALJ did not dismiss PA Lentz's opinion because he was an "unacceptable medical source," but weighed it along with the other evidence in the record. Thus, the ALJ did not use the wrong legal standard when weighing his opinion.[12]

---

[12] To the extent that Miles's argument regarding PA Lentz amounts to a disagreement with the ALJ's RFC, that is nothing more than an invitation for the court to re-analyze the facts, re-weigh the evidence and make a de novo determination of the proper RFC in this matter, which I am not permitted to do under the regulations. The issue

### D. Credibility[13]

Miles argues that, based on his testimony that he required frequent, unpredictable rest breaks during the workday, along with his complaints of pain, the ALJ should have found that he was disabled. Specifically, Miles points to his testimony that, due to pain, he needed to lie down three to four times a day, could sit for only "an hour or two," and suffered leg, arm, and face numbness, and migraines. Pl.'s Br. at 11–12, Dkt. No. 15. When assessing Miles's RFC, the ALJ considered Miles's testimony regarding his limitations, but found that he was not entirely credible. R. 35–36.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Miles's subjective allegations of his disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of

---

before this court is whether the ALJs decision is supported by substantial evidence and substantial evidence supports the decision to reject PA Lentz's opinion that Miles could not work.

[13] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3P, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3P was issued after the ALJ's consideration of Miles's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking").

However, I note that the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider Miles's report of his own symptoms against the backdrop of the entire case record; in SSR 16-3, this resulted in a "credibility" analysis, in SSR 16-3, this allows the adjudicator to evaluate "consistency."

symptoms, like all other evidence of disability, are considered in the context of the Record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weight them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P (superseded by SSR 16-3P, (March 28, 2016)).

In this case, the ALJ found that Miles's statements regarding the severity of his limitations were not wholly credible because they were not supported by objective medical evidence, his treatment history, and the ALJ's observations of his behavior at the hearing. R. 35–36. The ALJ's opinion includes a detailed consideration of Miles's medical history along with Miles's own allegations, after which the ALJ concluded that Miles's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." R. 35. The ALJ outlined his reasons for this determination, including that Miles's allegations are not consistent with the relatively mild to moderate severity reflected in the objective medical findings and the conservative degree of treatment he has received.[14] R. 36. The ALJ specifies that Miles's allegation that he can only lift 10 pounds conflicts with both PA Lentz's and Dr. Humphries' opinions that he could lift 30 pounds and 25 pounds respectively. R. 35. The ALJ further writes:

> [T]he undersigned takes note that [Miles] was massaging his left hand at the hearing as though it was in pain. However, minutes later, at the end of the hearing, he grabbed the door handle forcefully with his left hand when leaving and while holding/carrying a briefcase type bag with this right hand. This is not consistent with his allegations that he has lost grip in his hands due to pain.

R. 35. The ALJ also noted that, while Miles testified that his impairments prevented him from performing his past relevant work as an electrician, he did not stop working due to his impairments, but rather was laid off. R. 35, 52.

---

[14] The ALJ also noted that a review of Miles's medical evidence from the Veterans Affairs Medical Center shows he has not been found to have a service connected disability. R. 36.

12

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

After a review of the entire record, I find that substantial evidence exists to support the ALJ's determination that Miles's testimony is only partially credible, and that Miles is capable of performing work at the level stated in the ALJ's opinion.

## **CONCLUSION**

For the foregoing reasons, Miles Motion for Summary Judgment is **DENIED** and the Commissioner's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED** from the court's docket.

Entered: March 1, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

13

Case 7:15-cv-00550-RSB   Document 18   Filed 03/02/17   Page 13 of 13   Pageid#: 783